```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD HARVEY                       :
                                    :
                    Plaintiff,      :
                                    :
    v.                              :
                                    :
LIBERTY MUTUAL GROUP, INC., OHIO    :   CIVIL ACTION
CASUALTY CORPORATION, AND           :
THE NETHERLANDS INSURANCE           :   NO. 13-cv-04693
COMPANY                             :
                                    :
                    Defendants.     :
                                    :
                                    :
```

**MEMORANDUM & ORDER**

**JOYNER, J.**                                      **MARCH 25, 2014**

Before the Court are Defendants' Motion for Summary Judgment (Doc. No. 13), Plaintiffs' Response thereto (Doc. No. 15), and Defendants' Reply in further support thereof (Doc. No. 16). For the following reasons, the Court hereby GRANTS Defendants' Motion for Summary Judgment.

**II.  BACKGROUND**

The stipulated facts, as agreed to by the parties, are as follows. On September 30, 2008, Plaintiff Edward Harvey was involved in an automobile accident in East Goshen Township in Pennsylvania. He was rear-ended by a vehicle being driven by Kyle Smedley, who is not a party to the present action, while waiting for a traffic light at the intersection of Paoli Pike and East Boot Road. At the time of the accident, Mr. Harvey was driving a

1

vehicle owned by his employer, Spanpro Services Group, and was in the course of employment.

Mr. Smedley was insured by Erie Insurance and had a liability insurance policy with a limit of $250,000.00. Mr. Smedley was also insured by an Erie Insurance umbrella insurance policy with a $2 million limit of liability. Thus, Mr. Smedley had $2,250,000.00 in total liability coverage for the accident.

Mr. Harvey asserted a liability claim in the Court of Common Pleas of Chester County against Mr. Smedley for personal injuries and lost wages sustained as a result of the accident. Mr. Harvey, Mr. Smedley, and Erie Insurance decided to proceed to binding arbitration in lieu of resolving the dispute in the Court of Common Pleas. On May 21, 2012, they entered into a binding arbitration agreement, which contained the following provisions:

> 3. The parties agree to discontinue the lawsuit, and the provisions contained herein are the manner in which the dispute which underlies the lawsuit will be resolved.
>
> . . .
>
> 8. The payment resulting from an award in this matter of the arbitrator shall be a low of $0.00 and no more than $1,350,000.00. The award will be amended to reflect the above described perimeters to the extent it falls outside of them.
>
> 9. The binding high figure of $1,350,000.00 restricts the amount of the award for purposes of this arbitration only; it is

>not intended to have any preclusive effect on any subsequent proceeding including any underinsured motorist claim or arbitration relating to the accident of September 30, 2008. (Def. Mot. for Summ. Judgement at Ex. B).

After an arbitration hearing, the arbitrator entered an award of $680,000.00 in favor of Mr. Harvey. (Def. Ex. C).

At the time of the accident, Spanpro Services Group was insured under an automobile insurance policy issued by the Netherlands Insurance Company ("Netherlands"). The Netherlands policy contained the following provision in part:

>A.  Coverage
>
>   1.  We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "underinsured motor vehicle".
>
>   2.  We will pay under this coverage only if Paragraph a. or b. applies:
>
>       a.  The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or ....
>   (Def. Ex. D).

Prior to the binding arbitration, Mr. Harvey's attorney

notified Netherlands that the underlying suit would be arbitrated. In response, Senior Claims Specialist Robert J. Wood wrote as follows:

> I am writing regarding your client Edward Harvey . . . I understand that you have entered into a binding arbitration agreement with the carrier for the tort feasor. I further understand that this agreement has a high parameter of $1,350,000 even though the tort feasor has $2,250.00 [sic] in available coverage.
>
> Please be advised that The Netherlands Insurance Company nor Ohio Casualty Insurance Company will be bound by any arbitration award. [sic]. We also believe we are entitled to an offset of the entire $2,250,000 in available coverage.
>
> If you intend on pursuing an UIM claim under this policy, please forward all medical bills and reports, all depositions transcripts and discovery, etc, so that I can review this claim. (Pl. Response Ex. C).

Following the arbitration award, Mr. Harvey asserted an uninsured motorist ("UIM") claim against Netherlands. Netherlands contended that the underlying arbitration precluded a UIM claim. On July 11, 2013, Mr. Harvey filed the present lawsuit in the Court of Common Pleas of Philadelphia County. On August 13, 2013, Defendants removed the suit to this Court.

**III. JURISDICTION**

The Court will first address its jurisdiction to hear the above-captioned matter. Federal district courts have original

jurisdiction over actions between citizens of different states in which the matter in controversy exceeds $75,000.00, exclusive of interests and costs. See 28 U.S.C. § 1332(a). Plaintiff is a citizen of the Commonwealth of Pennsylvania. (Complaint, Court of Common Pleas of Philadelphia, Doc. No. 1 ¶ 1). Defendant Liberty Mutual Insurance Corp. is incorporated in Massachusetts with its principal place of business in Massachusetts. (Notice of Removal, Doc. No. 1, ¶ 4). Defendant Ohio Casualty Corporation is incorporated in New Hampshire with its principal place of business in Massachusetts. Id. Defendant The Netherlands Insurance Company is incorporated in New Hampshire with its principal place of business in Massachusetts. Id. Because none of the Defendants is a citizen of the same state as the Plaintiff, the Court finds that this is a suit between citizens of different states. See 28 U.S.C. § 1332(a)(1),(c)(1).[1]

"The general federal rule is to decide the amount in controversy from the complaint itself." Angus v. Shiley Inc., 989 F.2d 142, 145 (3d Cir. 1993)(citing Horton v. Liberty Mutual Ins. Co., 367 U.S. 348, 353 (1961)). However, the plaintiff's pleadings are not wholly dispositive under the legal certainty test - the Court must examine not just the amount claimed by the plaintiff, but also his actual legal claims. Morgan v. Gay, 471

---

[1] The carrier issuing the subject policy is The Netherlands Insurance Company. Defendant Netherlands notes that its arguments are equally applicable to the other two defendants, had either of them been the Plaintiff's insurer. (Def. Mot. for Summary Judgment at 1 N.1).

F.3d 469, 475 (3d Cir. 2006). The amount in controversy is measured by a reasonable reading of the value of the rights being litigated. Angus, 989 F.2d at 145. When a case is filed in federal court, it "must be dismissed or remanded if it appears to a legal certainty that the plaintiff *cannot* recover more than the jurisdictional amount of $75,000." Frederico v. Home Depot, 507 F.3d 188, 195 (3d Cir. 2007)(citing Valley v. State Farm Fire and Cas. Co., 504 F.Supp.2d 1, 3-4 (E.D. Pa. 2006)(emphasis in original)).

When a case has been removed from state court to federal court, the party asserting federal jurisdiction bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court. See Frederico, 507 F.3d at 193-95. The defendant in such cases must prove by a legal certainty that the amount in controversy exceeds the statutory threshold. Id. at 197. "To determine whether the minimum jurisdictional amount has been met in a diversity case removed to a district court, a defendant's notice of removal serves the same function as the complaint would if filed in the district court." Id. (citing Morgan, 471 F.3d at 474).

In the present case, Plaintiff brought an uninsured motorist ("UIM") claim against Defendant Netherlands in the Court of Common Pleas, which Netherlands removed to federal court. The Pennsylvania Motor Vehicle Financial Responsibility Law

6

("MVFRL"), 75 Pa. C.S. § 1701 *et seq.*, requires that all automobile insurance companies offer underinsured and uninsured motorist coverages to their policy holders, unless the named insured rejects such coverage by signing a written waiver. See 75 Pa. C.S. § 1731(a)-(b). Under the MVFRL, an "underinsured motor vehicle" is defined as "[a] motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa. C. S. § 1702. The parties agree that Mr. Smedley is covered by an insurance policy worth $2,250,000.00. Thus, Plaintiff's claim against Defendant Netherlands is any amount *in excess of* $2,250,000.00 that he has sustained in losses and damages as a result of his car accident.

In his complaint in state court, Plaintiff demands from Netherlands "an amount in excess of Fifty Thousand Dollars ($50,000.00) plus lawful interest and costs." (Complaint, Court of Common Pleas of Philadelphia, Doc. No. 1). The factual basis of Plaintiff's damages are his loss of earnings and earning capacity, as well as present and future medical expenses as a result of lumbar-sacral strain and sprain, lumbospondylosis, L4-L5 central disc protrusion with annular tear, right L5 radiculopathy with motor weakness, right foot drop, anxiety, emotional upset and functional disturbances. Id. ¶ 14, 17, 18.

For their part, Defendants provide the following support for federal diversity jurisdiction in their notice of removal:

"Plaintiff's complaint demands an amount in excess of $50,00.00 [sic]. The amount in controversy, upon information and belief, is in excess of Seventy Five Thousand Dollars ($75,000) exclusive of interest and costs in that plaintiff alleges that he is entitled to more than $50,000.00 in benefits and further alleges injuries including L4-L5 annular tear, right L-5 radiculopathy with motor weakness and right foot drop and permanent loss of income alleged to exceed $1,000.000.[sic]." (Notice of Removal, Doc. No. 1, ¶ 7-8).

The Court finds that Defendant Netherlands has sustained its burden in proving that the amount in controversy meets the requirements of § 1332. It would be reasonable for a jury to award Plaintiff an amount greater than $75,000, even after the initial coverage of $2.5 million, based on Plaintiff's allegations of loss of present and future income as well as future medical expenses resulting from the multiple, serious physical injuries Plaintiff sustained in the car accident. The Court thus has diversity jurisdiction over the present case under 28 U.S.C. § 1332.

**IV.  STANDARD OF REVIEW**

In deciding a motion for summary judgment under Rule 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Medical Protective Co. v.

Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (internal citation omitted). Under the rule, a Court must look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. In re Phillips Petroleum Securities Litigation, 881 F.2d 1236, 1243 (3d Cir. 1989). All facts must be viewed and all reasonable inferences must be drawn in favor of the non-moving party. Travis G. V. New Hope-Solebury School District, 544 F. Supp. 2d 435, 439 (E.D. Pa. 2008)(citing Troy Chemical Corp. v. Teamsters Union Local No. 408, 37 F.3d 123, 125-26 (3d Cir. 1994)); Oritani Savings & Loan Assn. v. Fidelity & Deposit Co. of Md., 989 F.2d 635, 638 (3d Cir. 1993).  An issue of material fact is said to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Belmont v. MBInv. Partners, Inc., 708 F.3d 470, 483 n. 17 (3d Cir. 2013)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

**V.   ANALYSIS**

The goal of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. C.S. § 1701 *et seq.*, is to protect those persons who purchase automobile insurance and are then involved in accidents with motorists who did not purchase similar coverage. Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 209 (3d Cir. 2001); Wolgemuth v. Harleysville Mut. Ins. Co., 535 A.2d 1145, 1149 (Pa. Super. Ct. 1988), *appeal denied* 535 A.2d

9

1145 (Pa. 1988). In order to address the problems caused by an increasingly high number of uninsured motorists, the statute sets out the minimum amount of coverage that must be offered to those who are insured. Lambert v. McClure, 595 A.2d 629, 631 (Pa. Super. 1991). It requires that all automobile insurance must offer underinsured and uninsured motorist coverages, unless the named insured rejects such coverage by signing a written waiver. See 75 Pa. C.S. § 1731(a)-(b). With regard to underinsured motorist ("UIM") coverage, the law provides:

> Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. Id. § 1731(c).

Under the MVFRL, an "underinsured motor vehicle" is defined as "[a] motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa. C. S. § 1702.

The parties disagree as to whether Mr. Harvey's claim qualifies as a proper UIM claim. Defendants argue that the extent of Mr. Harvey's losses and damages was determined in the binding arbitration with Mr. Smedley, and collateral estoppel bars Mr. Harvey from asserting otherwise. Moreover, Defendants aver, because there was sufficient coverage provided by the Erie

policies - $2,250,000 - to pay Mr. Harvey's $680,000 in damages, Mr. Harvey does not have a viable UIM claim. Mr. Harvey responds that his total losses and damages have not yet been adjudicated as required under the Netherlands policy – instead, the parties agreed in the arbitration agreement and by way of the letter from Netherlands Insurance Company to Mr. Harvey that the arbitration award would not be binding. Thus, Mr. Harvey argues, the only way to determine Mr. Harvey's losses and damages for the purposes of his UIM claim would be a trial in federal court. Only after those losses are ascertained can it be determined whether Mr. Smedley's insurance is sufficient to cover them.

Thus, the main issue before the Court is whether Mr. Harvey is estopped by the arbitration award from re-litigating the amount of his damages and losses. If collateral estoppel does apply, then Defendants will prevail on their present motion because Mr. Harvey's arbitration award of $680,000.00 is fully covered by Mr. Smedley's $2,250,000.00 insurance policy and he is not entitled to pursue a UIM claim. If Mr. Harvey is not estopped, then Defendant's motion fails because Mr. Harvey's losses and damages must be determined by a jury.

Collateral estoppel prevents re-litigation of an issue that has also been decided in a previous action. Witkowski v. Welch, 173 F.3d 192, 198 (3d Cir. 1999)(citing Schroeder v. Acceleration Life Ins. Co., 972 F.2d 41, 45 (3d Cir. 1992)). The doctrine

applies when (1) the issue decided in the prior case is identical to the one presented in the later case, (2) there was a final judgment on the merits, (3) the party against whom the plea is asserted was a party or in privity with a party to the prior case; and (4) the party against whom the doctrine is asserted or his privy had a full and fair opportunity to litigate the issue in the prior proceeding. Id. at 199.

The Court finds factors one and four to be satisfied. The issue decided in the prior case, the monetary amount of Mr. Harvey's losses and damages as a result of his car accident, is identical to the issue before this Court. The determination of this issue was also essential to the arbitrator's judgment and ultimate award of $680,000.00. Moreover, Mr. Harvey had a full and fair opportunity to present all evidence, represented by counsel, regarding his losses and damages in that arbitral hearing.

Factors two and three, however, present thornier questions. Typically the factual and legal findings resulting from an arbitration are given preclusive effect in subsequent civil litigation. See, e.g., Incollingo v. Maurer, 394 Pa. Super. 352, 356-60 (Pa. Super. Ct. 1990)("The issue which we must resolve is whether a plaintiff, after having the question of damages determined by a panel of arbitrators . . . may then proceed in a separate civil action for the same damages . . . The appellant is

not entitled to a second bite of the apple. . . ."); Cassidy v. Prudential Property & Cas. Ins. Co., 40 Pa. D. & C.3d 551, 556 (Pa. Com. Pl. 1986)(granting summary judgment to Defendant based on arbitrator's previous determination of main issue in case). Yet because arbitration is a creature of contract law, "[w]here the terms of an arbitration agreement limit the binding effect of the award in another proceeding, [the court will] honor those terms as part of the agreement between the parties." Muse v. Cermak, 630 A.2d 891, 893 (Pa. Super. Ct. 1993). A more complicated issue is presented if the parties to the original arbitration who agree that the arbitration will have no preclusive effect are not in privy with all the parties to the subsequent litigation; in that case, the terms of the arbitration agreement will bind only the parties to the agreement. Whirlpool Corp. v. Penske Logistics, Inc., 2011 WL 7758325 (Pa. Com. Pl. 2011).

In the present case, the parties to the arbitration - Mr. Harvey, Mr. Smedley, and Erie Insurance - agreed to a provision regarding preclusive effect.[2] "[I]n construing the language of an arbitration provision, courts must resort to the rules of contractual construction." Muse, 630 A.2d at 893. "When the words of a contract are unequivocal, they speak for themselves, and a

---

[2] The parties also agreed that "[t]he interpretation and construction of [the arbitration agreement] shall be governed by the laws of the Commonwealth of Pennsylvania." (Def. Ex. B. ¶ 14).

meaning other than that expressed cannot be given them. This court will not rewrite the contract or give it a construction that conflicts with the plain, ordinary, and accepted meaning of the words." Id. (internal quotation omitted). The provision at issue states that

> The binding high figure of $1,350,000.00 restricts the amount of the award for purposes of this arbitration only; it is not intended to have any preclusive effect on any subsequent proceeding including any underinsured motorist claim or arbitration relating to the accident of September 30, 2008. (Def. Ex. B ¶ 9).

This provision is plain: it provides that the binding high figure of $1,350,000 will not restrict the amount that may be awarded in damages in any proceeding subsequent to the arbitration. The word "it" immediately following the semicolon refers to the subject of the sentence, "the binding high figure." The portion of the sentence following the semicolon could be rephrased as "the binding high figure is not intended to have any preclusive effect." The provision does not, as Mr. Harvey argues, provide that the award as a whole has no preclusive effect. Because the arbitrator's award of $680,000 did not exceed the binding high figure, the provision limiting the preclusive effect of this figure has no bearing on the present litigation. The award of $680,000 for Mr. Harvey's damages thus carries with it the full force of collateral estoppel in this suit. See

Incollingo, 394 Pa. Super. at 360.

Even if the Court were to accept Mr. Harvey's interpretation of the agreement, the provision would still not be enforceable as against Defendant Netherlands. The Court is guided by the reasoning of two cases, Muse v. Cermak, 630 A.2d 891 (Pa. Super. Ct. 1993) and Whirlpool Corp. v. Penske Logistics, Inc., 2011 WL 7758325 (Pa. Com. Pl. 2011). In Muse, the insurance carriers of two motorists conducted an arbitration and agreed that a decision of the arbitration panel would have no preclusive effect. 630 A.2d at 893. In a subsequent suit between the motorists, the Superior Court concluded that the court had to honor the "terms as part of any agreement *between the parties*." Id. (emphasis added). Thus, the Superior Court found sufficient identity of interest between each insurance carrier and its insuree motorist to hold the motorists to the terms of the agreement entered into by the carriers. The arbitral decision did not have collateral estoppel effect in the litigation. Id.

In Whirlpool, an arbitration between Penske Logistics, Inc. and Whirlpool Corporation resulted in a determination of liability on the part of Penske. Whirlpool, 2011 WL 7758325 (Pa. Com. Pl. 2011). Penske and Whirlpool had agreed that any decision rendered would not be res judicata or have collateral estoppel effect. Id. In a subsequent litigation Penske asserted crossclaims against defendants who had not been party to the

15

arbitration. Id. The Court of Common Pleas found that Penske was estopped from denying its liability in pleadings against the crossclaim-defendants, because the crossclaim-defendants had neither been parties to the previous arbitration nor were in privity with the parties. Id. Thus, the crossclaim-defendants were not bound by the term of the arbitration agreement stating that the arbitral decision would have no res judicata effect. Id.

The Court finds Whirlpool most analogous to the present context. Netherlands was not a party to the arbitration. Netherlands was also not in privity with Mr. Harvey regarding the arbitration proceedings. While it is generally true that "an insurance company is in privity with its insured," Catroppa v. Carlton, 998 A.2d 643, 646 (Pa. Super. Ct. 2010)(citing Daily v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 97 A.2d 795, 796 (Pa. 1953)), this principle has important limits. Id. Privity requires "such an identification of interest of one person with another as to represent the same legal right." Id. (citing Ammon v. McCloskey, 655 A.2d 549, 554 (Pa. 1995)). The interests of Netherlands and Mr. Harvey were not so aligned during the arbitration as to represent the same legal right. For example, while it may have been in Mr. Harvey's interest to agree to a binding high figure lower than the full extent of Mr. Smedley's available insurance, Netherlands did not share this interest. Because the terms of the arbitration agreement bound

only the parties to it and those in privity with parties, Netherlands is not bound by the provision regarding preclusive effect. Thus, the damages award of $680,000 estops Mr. Harvey from relitigating his damages. See Whirlpool, 2011 WL 7758325 (Pa. Com. Pl. 2011).

The Court also finds that Netherlands' July 3, 2012 letter to Mr. Harvey is insufficient to constitute a waiver of the affirmative defense of collateral estoppel. Under Pennsylvania law, "waiver is the voluntary and intentional abandonment or relinquishment of a known right . . . To constitute a waiver of a legal right, there must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it." Kamco Indus. Sales, Inc., v. Lovejoy, Inc., 779 F.Supp.2d 416, 423 (E.D. Pa. 2011)(internal quotations omitted). Thus, though it is possible for a party to contractually waive certain affirmative defenses, the intent of the party to do so would have to be evident from the document at issue, and the breadth of the waiver would have to be enforceable. See generally U.S. Bank, Nat. Ass'n v. Rosenberg, Civ. A. 12-723, 2013 WL 272061 at *3 (E.D. Pa. Jan. 24, 2013); HFC Commerical Realy, Inc. v. Axelrod, Civ. A. 89-8739, 1991 WL 24895 at *2 (E.D. Pa. Feb. 22, 1991). The letter in this case does not contain the type of "clear, equivocal and decisive" language necessary for the Court to find that Netherlands has waived its collateral estoppel

defense. Not only does the letter not use the terms "collateral estoppel," "waiver," or "defense," but it asserts that Netherlands is entitled to an off-set of the $2.25 million available in insurance coverage, thus evidencing Netherlands' intent to pursue what it believes that it is owed, not waive its right to do so. See (Pl. Ex. C).

Because Mr. Harvey's losses and damages were determined in a binding prior proceeding not to exceed Mr. Smedley's available insurance, his UIM claim fails under both the Pennsylvania statute and the terms of his insurance contract with Netherlands. His claim is not a UIM claim under the MVFRL because Mr. Smedley's insurance was not insufficient to pay Mr. Harvey's losses and damages. See 75 Pa. C. S. § 1702. As to the insurance contract with Netherlands, "the limits of [Mr. Smedley's] liability bonds or policies" were not exhausted by payment of judgments or settlements. See (Def. Ex. D). Instead, the $680,000 that Mr. Harvey was awarded in damages and losses was satisfied in full by Mr. Smedley's coverage provided by Erie Insurance.

The Court thus finds that no genuine issues of material fact exist for trial, and GRANTS Defendant Netherlands' Motion for Summary Judgment.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment. Plaintiff's claims are DISMISSED in their entirety.